## Carter v. Hall and Martin.

(Decided March 22, 1921.)

### Appeal from Webster Circuit Court.

1. Contracts—Acceptance—Mutuality.—A contract which the laws do not require to be in writing, when signed by one of the parties to it, and delivered to the other party, may be accepted by the latter orally, without signing it, and if he does so, the contract will be mutually binding according to its terms.

2.  Contracts—Presumptions.—When the parties undertake to put into writing a contract, although it is such a one, as is not required to be in writing, it will be presumed, that the entire contract is embraced in the writing.

3.  Contracts—Acceptance.—If a party stipulates, that a contract, reduced to writing, must be signed by or accepted in writing by the other party, the acceptance must be in accordance with the stipulation.

4.  Brokers—Contracts—Consideration.—When a contract is made between a landowner and a real estate broker, for a sale of the land, or the securing of a purchaser, and for which a commission is agreed to be paid to the broker, the obligation of the latter to use diligence in selling the land, and the expense and labor, which he undertakes to sustain, is a sufficient consideration to support the contract.

5.  Brokers—Employment of Broker—Commissions.—When a brokerage contract for the sale of land, for a commission is entered into, and in which the owner agrees to give to the broker, the exclusive privilege of selling the land, during a definite period, stated in the contract, the owner can not during that period sell the land himself nor through any other person, than the broker, and if he does so, he will be liable to the broker for the commission agreed upon in the contract.

6.  Brokers—Breach of Contract—Measure of Damages.—When a contract, between a real estate broker and the owner of the land, gives to the broker, the exclusive privilege of selling the land, during a definite period, fixed in the contract, and in violation of the contract, the owner sells the land, during the existence of the contract, the measure of damages for the breach is the commission, stipulated in the contract, upon the price for which the land was sold.

BOURLAND & BLACKWELL for appellant.

C. W. BENNETT and G. L. WITHERS for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE HURT—
Affirming.

The appellees, J. T. Hall and W. A. Martin, partners, were engaged in the business of real estate brokerage, and the appellant, W. W. Carter, on a day in the month of August, 1919, listed a farm with them for sale, under a contract, which according to the allegations of the petition as amended, obligated the appellees to exert reasonable diligence on their part to secure a purchaser for the farm between the date of the contract and the first day of January, 1920, and in consideration of same, the appellant covenanted to pay them a commission of three per centum on the price secured for the farm when sold, and

to give appellees the exclusive privilege of selling the property between the time of making the contract and January 1st, 1920, at $30,000.00, one-third to be paid in cash, and the balance on a reasonable credit, the commission to be due as soon as the sale was consummated. The appellees aver in their petition and amendment thereto that in pursuance of their obligation under the contract, they extensively advertised the farm for sale and carried to and showed the farm to several prospective purchasers at considerable expense to themselves, in time, labor and money, and were actively exerting themselves in trying to perform their part of the contract. The contract was in writing, except as will be hereinafter stated, and was subscribed by appellant and delivered to them and accepted by them. On the 5th day of September, 1919, and while the contract was in full force, the appellant, without their knowledge or consent, sold the farm for the sum of $30,000.00, and executed a deed of conveyance to the purchaser. They allege that thereafter on the 6th day of September, 1919, the appellant falsely, and with the purpose to defraud them out of the benefits of the contract, represented to them that he had not sold the farm, and no longer desired to do so; that his son had recently married and desired to lease the farm for the year 1920 and he wanted to lease it to him, and for that reason had changed his mind and no longer wanted to sell it and would not do so, and sought to get a rescission of the contract and his release therefrom, and the appellees believing the truth of the representations and relying upon same were induced to accept the sum of $150.00 in settlement of what was due them under the contract and to release the appellant from any further payment or obligations under it. The appellant executed and delivered to them his check for the sum of $150.00 and they delivered the writing to him, but when thereafter they learned of the fraud which had been practiced upon them in procuring the settlement and release of the contract, they offered to return the check to appellant, which he refused to receive, but they never presented the check for payment, and filed and tendered same to appellant with their pleading; that if they had known that appellant had sold the farm for $30,000.00, and that he then owed them under the contract, the sum of $900.00, they would not have agreed to release it or received the check of $150.00 in settlement of it.

The appellant demurred generally to the petition as amended. The demurrer was overruled, and the appellant declining to further plead, a judgment was rendered in favor of appellees against him for $900.00, which was three per centum of the price for which the farm was sold, and he has appealed from the judgment.

The demurrer admitting the truth of the averments of the petition as amended, the only question for decision is, whether the petition as amended states facts sufficient to constitute a cause of action in favor of appellees and to support the judgment. The appellant insists that the demurrer should have been sustained for three different reasons, viz:

1. The contract never having been signed by appellees was not binding upon them, and hence not binding upon the appellant.

2. There was no consideraton for the execution of the contract by appellant, and hence, lacking mutuality, he was at liberty to revoke it at any time, and he did so by selling the land.

3. The appellees having received $150.00 as a settlement for the sum due them under the contract, and released the appellant from further obligation, they are estopped to assert any further claim under the contract.

The appellant, further, contends that the measure of recovery adjudged was erroneous in that the appellees were only entitled to sue and recover upon a *quantum meruit.*

(a) The contract sued on was attempted to be reduced to writing and was subscribed by appellant and delivered to and accepted by the appellees. The appellant subscribed his name upon a dotted line at the end of the writing, and beneath his name is another dotted line, and appellant contends that such fact shows upon its face, without any allegation in regard thereto, that it was intended to be subscribed by appellees also, and not having been subscribed by them, it never became obligatory upon them, and he could never have maintained an action thereon against them. His insistence is in effect that no contract was ever made or existed, but his demurrer admits that he signed the writing and delivered it to the appellees, and the other averments of the petition show that it was accepted by them. His contentions are not tenable. The two dotted lines may have been intended for the signatures of contracting parties upon the same side of the

contract, where there were more than one. A contract between a principal and an agent, appointing and empowering an agent to sell the land of the principal or to find a purchaser therefor, as is the usual real estate brokerage contract, does not necessarily have to be in writing at all. It may be in parol. Talbott v. Bowen, 1 A. K. M. 437; Isaac v. Gearheart, 12 B. M. 231; Whitworth v. Pool, 29 R. 1104; Shadwick v. Smth, 147 Ky. 159. As a matter of course, however, when the parties to such a contract undertake to put it into writing, the presumption will be that the entire contract was put into the writing, or where a contract is signed by only one of the parties and accepted by the other in parol, the presumption is that the writing contains the entire contract. A contract which is not required to be in writing, although signed by one of the parties, need not be signed by the other to make it obligatory upon both, if delivered and accepted by the other orally or by the conduct of the other acquiescing therein, as in the instant case. 13 C. J. 281; 6 R. C. L. 641; Graves v. Smedes, 7 Dana 344. The appellant could have stipulated, that the writing should not constitute a contract until subscribed by the appellees or accepted by them in writing, and if such stipulation had been provided for, the writing would not have been obligatory until it was accepted in the way stipulated, but there is nothing to indicate that such stipulation was made or any understanding between the parties that it should not be accepted, except in writing or by the signatures of the appellees, and the conduct of the appellant in securing a settlement and release of the contract as averred in the petition, conclusively shows that no such stipulation was ever prescribed. When it was delivered to the appellees and accepted by them, it became mutually binding in accordance with its terms.

(b) Neither is the contention, that the contract is unilateral and lacks mutuality, tenable. It is true that the contract as written, did not contain any express covenant upon the part of the appellee to do anything, but it is not necessary to here consider whether an obligation upon their part to exert themselves with diligence to find a purchaser for the land, within the time fixed in the contract, should be implied, since the appellees allege that such obligation upon their part was one of the conditions of the contract, and that same was left out of the writing

by the mutual mistake of the parties, and the demurrer admits this to be true.   The appellant desired to sell the land before January 1st, 1920, and the efforts which the appellees obligated themselves to make, in effecting a sale for him, and the expenses incurred by them, and labor performed to that end, was a sufficient consideration to support the contract.   Shadwick v. Smith, *supra*. Mutual and concurrent promises to do or perform some service of value are always sufficient to support each other.   Wilson v. Davis, 1 A. K. M. 219; Turner v. Johnson, 7 Dana 435; Nunnally v. White, 3 Met. 384.   Any benefit which accrues to a promisor or any disadvantage or loss to be sustained by a promisee, is a sufficient consideration to support a contract.   Lemaster v. Burkhart, 2 Bibb 23; Overstreet v. Phillips, 1 Litt. 120; Talbott v. Stemmons, 10 K. L. R. 33.   When land is listed with a broker, who is to receive a commission for making a sale, or find a purchaser, and no period is stipulated in the contract within which he is to have the exclusive privilege of making a sale of it, the party listing the land may revoke the contract at any time, and a sale of the land by him is treated as a revocation, and although an exclusive agency is given the broker, if there is no specified time fixed in the contract within which he has to exercise his agency and no exclusive privilege of sale is given him, it is held that such a condition in a contract does not prohibit the owner of the land from making a sale and terminating it, and that such a condition in it only prohibits the owner from effecting a sale through some other agent, but when the exclusive privilege is given the broker to sell the land within a time fixed in the contract for that purpose, the owner thereby contracts that he will not sell the land himself, nor through any other person, during the continuance of the period fixed in the contract, and. hence then having no right to sell it himself, nor to sell it through any other person than the broker, if he does make a sale of it himself or sells it through any other broker or person, he violates the contract and is liable for the consequences.

(c)   One can not be estopped by something which he has been induced to do to his damage by the fraudulent representations or concealments of the party, who is invoking the estoppel.   According to the averments of the petition as amended, and which the demurrer admits to be the truth, at the time the appellant induced appellees

to accept a check for $150.00 in satisfaction of the contract, he then owed them the sum of $900.00, and by fraudulently concealing the fact from them and falsely representing that he had not sold the farm, and did not intend to, and had changed his mind in regard to it and desired it for his son, he induced them to accept for their services a much less sum than he then owed them. A court could not in good conscience sustain a settlement, thus admittedly procured by false, fraudulent and unfair means. Pepper v. Aiken, 2 Bush 251; Hicks v. Wallace, 190 Ky. 5; Chappell v. Jones, 5 Mon. 422; Fox v. Henderson, 150 Ky. 115; Chambers v. Johnston, 180 Ky. 73.

(d) Where an owner lists his land for sale with a broker, under a contract that the broker shall have the exclusive privilege of selling the land during a definite time stated in the contract and violates the contract by selling the land himself before the expiration of the time limit prescribed and agreed upon, and thus deprives the broker, who is then actively engaged in attempting to carry out the contract and to effect a sale, of the chance of selling the land and to earn the commission agreed upon, the measure of damages for such breach of the contract is the commission stipulated in the contract upon the selling price of the land. Murphy v. Sawyer, etc., *supra*.

The judgment is therefore affirmed.