## LADD *v.* TEICHMAN.

1. CONTRACTS—CONSTRUCTION—AMBIGUITY.

   Any ambiguity in a contract is construed against the party who drafted it.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 12 Am Jur, Contracts § 252.
[2, 3] 8 Am Jur, Brokers §§ 189, 192, 193.
  Character and extent of right of broker who has exclusive contract, where sale is effected without his agency.  64 ALR 395.
[4] 17A Am Jur, Easements § 3.
[5] 8 Am Jur, Brokers § 139.

2. BROKERS—COMMISSIONS—EXCLUSIVE SALES AGREEMENT—TIME—SUBSTANTIAL PERFORMANCE.

A real-estate broker is entitled to his commission for a sale made while the contract is effective with the owner for commissions, where the contract is for exclusive sale rights for a reasonable time limit and the broker shows substantial performance of the duties imposed upon him by the contract even though he does not produce a buyer.

3. SAME—COMMISSIONS—EASEMENT FOR POWER LINES.

Real-estate broker who had an exclusive sale contract for period of nearly 3 years for subdivision which he was to develop, and to whom owner referred public utility corporation for property settlement of claim adjustment for right-of-way for power "high line" over the subdivision *held*, entitled to commission on sale of the easement, where it also appears that the plaintiff's services will not be diminished although the sale value of some of the lots would be adversely affected.

4. EASEMENT—PROPERTY.

An easement is a property right in real estate and may be a valuable right.

5. BROKERS—COMMISSIONS—EXCLUSIVE SALE CONTRACT—PARCELS—EASEMENT.

Real-estate broker was entitled to commission under exclusive sale contract on sale of easement to public utility corporation, notwithstanding contract provided for commission for sale of "parcels" in the subdivision, the term "parcel" being a generic one, capable of many definitions including a "part of an estate", such as an easement.

Appeal from Oakland; Doty (Frank L.), J. Submitted April 7, 1960. (Docket No. 28, Calendar No. 48,175.) Decided June 6, 1960.

Assumpsit by Lyster C. Ladd against Ferdinand Teichman, Barbara Teichman, William A. Teichman, and Helen D. Teichman for commission as real-estate dealer and developer on sale of easement. Judgment for defendants. Plaintiff appeals. Reversed and judgment ordered entered for plaintiff.

*Dell, Heber & Shantz (John F. Shantz,* of counsel), for plaintiff.

*Arthur M. Lang,* for defendants.

EDWARDS, J. This is a suit in assumpsit to recover a commission plaintiff claims to be due under a contract to sell real estate for defendants. The trial court which heard the case without a jury held that the particular sale and interest sold were not within the contemplation of the contract, and entered judgment for defendants from which plaintiff appeals.

There are no important disputes as to the facts. The defendants-appellees, Teichmans, a father and son and their 2 wives, owned an unsubdivided tract of land consisting of 80 acres in Oakland county. The plaintiff-appellant, Ladd, was a licensed real-estate broker and a land developer. The parties entered into a written agreement for Ladd to subdivide and develop the Teichman property and sell it in parcels, with the Teichmans bearing the development expense and Ladd receiving a commission of 25% of each sale price.

The relevant portions of the contract follow:

"Whereas parties of the first part desire to subdivide said property and desire that said second party shall look after the details of subdividing said property and promote the sale thereof, but the expenses of surveys, construction of roads, and all things incidental to subdividing of said property to be paid by parties of the first part, and

"Whereas it is the desire of the parties that the property shall be subdivided into parcels as per the attached plat, the overall price of said property when subdivided, to be not less than $160,000, and

"Whereas said party of the second part desires to promote the sale and sell said property, in accordance with the attached plat, and price list to

be later approved by both parties hereto, equalling above amount, and made a part of this agreement and kept known as exhibit 'A,' and

"Whereas both first and second parties desire that said second party shall receive, as commission for the sale of said parcels in the subdivision, 25% of the sale price.    *    *    *

"Now, therefore, in consideration of the mutual covenants, conditions, and stipulations to be by each of said parties performed, it is agreed and understood as follows:

"That said first parties hereby appoint said second party as its sales agent for the promotion and sale of property hereinbefore described and that said second party is to do the detail work in connection with the subdividing of the property, but all expenses of subdivision to be paid by first parties and each of said parties agree that the property shall be subdivided into parcels as per the attached plat, the overall price of said property when subdivided to be not less than $160,000, in accordance with the attached plat, and a price list to be later approved by both parties hereto, equalling the above amount and made a part of this agreement and kept known as exhibit 'A,' and

"It is further agreed that second party is to do everything necessary to prepare said property, as hereinbefore described, for the purpose of marketing same in parcels as per the attached plat, and shall have a plat prepared and obtain the approval of the proper authorities and record the plat, expenses to be borne by first parties, and present a copy of the plat together with a price list to first parties, to be approved by first parties, which price list shall be the basis of all selling and shall be marked exhibit 'A' and attached to this agreement.

"It is further agreed that second party shall have exclusive sale of this property until the 31st day of December, 1957."

Subsequent to the execution of the contract above, and during the period of appellant's "exclusive sale" rights, the Detroit Edison Company approached the owners concerning a right-of-way for a power "high line" over the property in question. Defendant William Teichman referred the matter to appellant:

"DR. WILLIAM A. TEICHMAN
15319 Wyoming Avenue
Detroit 38, Michigan
"September 21, 1956
"Mr. B. F. Wagner
Detroit Edison Company
Room 858 G.O.
2000 Second Avenue
Detroit 26, Michigan
*"Dear Mr. Wagner:*
"I have turned the property settlement claim adjustment over to Mr. L. C. Ladd of the Ladd Realty Company in Royal Oak, Michigan.

"Will you please contact Mr. L. C. Ladd to arrange a meeting for a Thursday so that I may be present also.

"Thanking you for your cooperation, I am
"Very truly yours,
"WAT:hp        "WILLIAM A. TEICHMAN"

Subsequently plaintiff negotiated with the Edison representatives and participated in several conferences between them and William Teichman representing the owners. On July 13, 1957, defendants-appellees granted Detroit Edison an easement for its "high line" over 7 of the lots in the subdivision. The easement, in addition to being a right-of-way, also gave Edison the right to cut trees and brush on the 7 lots, and required its prior approval of the construction of any buildings thereon. The Teichmans received $17,500 for the easement. They declined to pay Ladd any commission. In discus-

sion of this latter topic, Ladd prepared an amendment to the sales agreement by which his commission would have been reduced to approximately 10%. On the Teichmans' refusal to sign this, Ladd filed the instant suit for the full amount claimed due under the original contract.

The trial judge, relying on *Johnson* v. *Sirret,* 153 NY 51 (46 NE 1035), held that the sale of an easement was not the sale of a "parcel" under the contract. Further, he held that the contract created an "exclusive agency" but that where the owner produced and negotiated the sale, the agent was not entitled to a commission. In this regard, he relied on *Crawford* v. *Cicotte,* 186 Mich 269, and *McOmber* v. *Campion,* 219 Mich 604.

We agree with appellees that appellant having drafted the contract, any ambiguity contained in it must be construed against him. *Bonney* v. *Citizens' Mutual Automobile Ins. Co.,* 333 Mich 435; *Veenstra* v. *Associated Broadcasting Corporation,* 321 Mich 679. We do not, however, find this contract unclear.

It seems likely, from its wording and from the circumstances of its negotiation, that the parties did not contemplate the exact sort of sale which the Edison Company easement represented.

Even so, however, we find it impossible to agree with the trial judge in holding that plaintiff was not entitled to recover a commission under the contract.

The unambiguous language of the contract gave plaintiff the "exclusive sale of this property until the 31st day of December, 1957."

This language appears to grant an exclusive right to sell for a specific period of time, rather than an exclusive agency as held by the trial judge. And appellant suggests that this disposes of the matter.

We do not find Michigan precedents (or those of our sister States) as clear on this point as is suggested.

Most Michigan real-estate commission disputes have revolved around whether the agent was the producing cause of the sale. Recovery of the commission was allowed on an affirmative finding in *Davis-Fisher Co.* v. *Hall,* 182 Mich 574 (LRA 1915A, 1224), and *Advance Realty Co.* v. *Spanos,* 348 Mich 464. Where the broker was held not to have produced the sale, recovery was denied in *Crawford* v. *Cicotte, supra,* and *Pittelkow* v. *Jefferson Park Land Co., Ltd.,* 283 Mich 374.

Where the broker was not the producing cause of the sale made but had performed in accordance with his contract, he was held entitled to his commission in *McOmber* v. *Campion, supra* and *Gonte* v. *Rosenberg,* 221 Mich 283.

In *McOmber, supra,* p 608, quoting a Wisconsin case, the Court recognized the right of an owner to sell without paying commission in spite of an exclusive agency contract:

" 'It is well settled that the giving of an exclusive agency to sell real estate does not preclude the owner from selling within the life of the contract to *one who he has reason to believe has not been procured by the agent.' Roberts* v. *Harrington,* 168 Wis 217, 218 (169 NW 603, 10 ALR 810)."

But in 2 cases where the language of the agreement granted what we construe to be exclusive sale rights for a specified period and there was specific language which purported to assure a commission to the broker even if the owner made an unassisted sale, the broker was allowed to recover after the owner sold. *Axe* v. *Tolbert,* 179 Mich 556; *DeBoer* v. *Geib,* 255 Mich 542. Even as to these last 2 cases,

however, there was either claim or recital of consideration on the part of the broker.

None of these caes is squarely in point as to our present situation, but they help to illustrate the preoccupation of the Michigan Court with the question of consideration as it relates to a claim for commission under a contract to sell real estate.

In other States, the courts are divided as to the right to commission on an unassisted owner sale under an exclusive right to sell provision in a contract to sell real estate. There is substantial authority for recovery: *Harris* v. *McPherson*, 97 Conn 164 (115 A 723, 24 ALR 1530); *Jones* v. *Hollander*, 3 NJM 973 (130 A 451); 8 Am Jur, Brokers, § 57, p 1015. There is also substantial authority against: *South Florida Farms Co.* v. *Stevenson*, 84 Fla 235 (93 So 247); *Beck* v. *Howard*, 43 SD 179 (178 NW 579); 64 ALR 410.

Where, however, recovery has been granted, it has generally been where there was proof of consideration for the contract in performance by the real-estate agent. Where it has been denied, the courts appear to have been influenced by want of any such proof. In this latter instance, the contract has been regarded as unilateral and subject to revocation. See *Harry H. Rosin Co.* v. *Eksterowicz*, 45 Del 314 (73 A2d 648); 2 Restatement, Agency 2d, § 449.*

---

* *"Unilateral contract of employment.* Although the principal agrees that the agent is to have an exclusive agency or an exclusive power of sale, the principal is not subject to liability to the agent for competing with the agent in violation of his promise unless the principal contracts to employ the agent and the contract is for some period of time either definitely specified or terminating at the end of a reasonable time; if there is no consideration for the principal's promise, or if it is agreed that the employment is terminable at the will of the principal, the principal is privileged to act with respect to the subject matter as he pleases, subject to the rule stated in section 454, that the principal must not unfairly terminate the agent's authority in order to take advantage of his efforts.

"In the ordinary listing of property with a real estate broker, the broker's promises to use his best efforts or other similarly indefinite promises are not, without other facts, sufficient to indicate that consideration has been given."

The supreme court of Ohio, dealing with a contract to sell real estate, containing an exclusive right to sell provision, said:

"Although the reasoning is not always the same, most of the cases dealing with the subject hold that where a real-estate agent, under the type of instrument involved in the instant case, has expended time, effort or money in attempting to secure a purchaser for the property, the consideration is supplied to make a binding and enforceable contract. *Hughes* v. *Bickley,* 205 Ala 619 (89 So 33); *Kimmell* v. *Skelly,* 130 Cal 555 (62 P 1067); *Hayes* v. *Clark,* 95 Conn 510 (111 A 781); *Harris* v. *McPherson,* 97 Conn 164 (115 A 723, 24 ALR 1530); *Lapham* v. *Flint,* 86 Minn 376 (90 NW 780); *Confer Bros., Inc.,* v. *Colbrath,* 149 Minn 259 (183 NW 524); *Jones* v. *Hollander,* 3 NJM 973 (130 A 451); *Morris* v. *Bragg,* 155 Va 912 (156 SE 381); *Gunning* v. *Muller,* 118 Wash 685 (204 P 779); *Greene* v. *Minn Billiard Co.,* 170 Wis 597 (176 NW 239). Compare, 1 Restatement of Contracts, p 53, § 45.

"If service only is contracted for and such service is performed, the necessary consideration is furnished to support the contract, irrespective of results. *Gonte* v. *Rosenberg,* 221 Mich 283, 288." *Bell* v. *Dimmerling,* 149 Ohio St 165, 171, 172 (78 NE2d 49, 52).

The reasoning of the Ohio court is very similar to that of Mr. Justice STEERE in the earlier Michigan case of *Axe* v. *Tolbert, supra.*

Thus it appears that where a contract to sell real estate contains a provision for exclusive sale rights and a reasonable time limit, and the broker is able to show substantial performance of the duties imposed upon him by the contract (even though he does not produce a buyer), when the owner makes the sale within the contract dates, the contract is held to be

enforceable and the broker entitled to his commission.

Against this statement of legal principles, our present case becomes simple to resolve. We deal here with a contract to sell real estate containing a specified time for performance, reciting in detail the duties of the broker under the contract and granting him an exclusive right to sell.

The sale occurred within the effective dates of the contract, prior to any revocation, and before any attempt at rescission. The trial record discloses that this sale occurred after plaintiff had entered upon performance of his duties under the contract pertaining to surveying, supervising road construction, drawing restrictions, and preparing the plat of the subdivision.

Moreover, the facts in our instant record disclose that the plaintiff actively participated in this particular sale. On Detroit Edison's first approach, defendants referred its representatives to plaintiff, and he sat in on the discussions which led up to the sale of the easement.

It is also clear from this record that the easement to Detroit Edison was given by all of the owner defendants, and that, if the broker is denied commission, this sale substantially and adversely affects the total amount of compensation which plaintiff otherwise stands to gain under the contract.

All of these facts serve to distinguish this case markedly from the factual situation in *Johnson* v. *Sirret, supra,* relied upon by appellees and the trial judge.

Although appellees present no issue as to this matter, we have also considered the fact that the Edison sale was not one which required the development services which appellant was obligated to furnish under the contract, and hence that it might be argued that the commission set by the contract was

excessive. Reading the contract as a whole, however, we find no indication that the Edison sale will tend to reduce appellant's duties or result in a windfall increase in his compensation. The most which may be said is that appellant, like the appellees, might have received the compensation contemplated somewhat in advance of contract expectations.

We believe that there was ample consideration shown to make this an enforceable contract, and that plaintiff became entitled to the commission provided by the contract when the Edison sale was completed.

Nor do we agree that the contract term of "parcel" excludes the easement with which we deal here. An easement is a property right in real estate. It can be, as here, a valuable one. "Parcel" is a generic term capable of many definitions. In *Chicago, M. & St. P. R. Co.* v. *Town of Churdan,* 196 Iowa 1057 (195 NW 996), "parcel" was held to be applicable to a railroad right-of-way. In *Martin* v. *Cole,* 38 Iowa 141, "parcel" was held to apply to a section of land. In *Rose* v. *Mesmer,* 142 Cal 322 (75 P 905), "parcel of the land" was held to refer to water rights.

Webster's New International Dictionary (2d ed), p 1775, defines "parcel" as "a part," a "portion," and 3 Bouvier's Law Dictionary (Rawle's 3d Rev), p 2445, includes in its definition of "parcel," "part of an estate." To restrict the meaning of "parcel" to include only those portions of the tract which were sold in fee would make it possible for the owner to avoid the contract entirely.

In the context of this contract, we believe the easement was a "parcel" of the land affected.

Reversed for entry of judgment for appellant. Costs to appellant.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, KAVANAGH, and SOURIS, JJ., concurred.